UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FELCIA HARDY and BARRY POPE
as personal representatives of the Estate of
ANDRE HARDY

15610 Plaid Drive
Laurel, Maryland 20707

        Plaintiffs

v.                                 CIVIL ACTION NO.:

JANET L. YELLEN, CHAIR
BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM

        Defendants

## COMPLAINT

### INTRODUCTION

1.    This case concerns claims under Title VII of the Civil Rights Act of 1964, 42

U.S.C. §2000*e, et seq.* asserted on behalf of plaintiff's decedent, Andre Hardy,

who died on March 28, 2016.

2.    Andre. Hardy (sometimes hereinafter referred to as "Mr. Hardy") died while

employed by the Defendant, Board of Governors of the Federal Reserve Systems

because of (and/or in part) due to the actions of the Defendant.

3.    Plaintiff, Felicia Hardy is the sister of the late Mr. Hardy.  Plaintiff, Barry Pope, is

the brother of the late Mr. Hardy.

4.    Plaintiffs Felicia Hardy and Barry Pope are the duly appointed personal

representatives of the estate of Andre Hardy.

5.      Plaintiffs Felicia Hardy and Barry Pope sue on behalf of Mr. Hardy's estate and

        his surviving heirs and bring all claims available to Mr. Hardy's estate and his

        beneficiaries under Title VII of the Civil Rights Act of 1964.

6.      Mr. Hardy was not married at the time of his death.

7.      Mr. Hardy had no children at the time of his death.

8.      Plaintiffs herein file the instant complaint alleging that the Board of Governors of

        the Federal Reserve System ("Board"), Internal Revenue Service (IRS)

        discriminated against Andre Hardy based on his sex (male) and retaliated against

        him for engaging in protected opposition and participation activity pursuant to

        Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq* and

        discriminated and retaliated against Plaintiff

9.      Plaintiffs herein allege that from 2011 to 2016, the Board repeatedly denied

        Andre Hardy competitive promotions, favorable transfers and requests for

        reassignments based on Mr. Hardy's gender (male) and prior protected activity

        (retaliation).

10.     Plaintiffs herein allege that from around 2015 to 2016, Plaintiffs supervisor

        created a hostile work environment based on Mr. Hardy's sex (male) and Mr.

        Hardy's prior protected activity.

11.     Plaintiffs herein allege that due to and/or in part because of Defendant's actions,

        Plaintiff committed suicide on March 28, 2016.

## JURISDICTION AND VENUE

12.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. §1331.

13. This Court has original jurisdiction over this matter as this case "arises under federal law," i.e., Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*

14. Venue is proper in this Court under 28 U.S.C. §1391(b) because the actions giving rise to Plaintiffs' claims occurred in the District of Columbia.

15. Venue is proper in this Court under 42 U.S.C. § 2000e-5(f)(3) because the alleged wrongdoing was committed in the District of Columbia, Mr. Hardy's post-of-duty was located in Washington, D.C. and the discriminatory and retaliatory actions occurred in Washington, D.C.

16. Defendant, Janet Yellen, is the Chair of the Board and is a proper party to this case.

## FACTS

17. Plaintiff, Felicia Hardy, is a resident of the state of Maryland.

18. Plaintiff, Barry Pope, is a resident of the state of Maryland.

19. Andre Hardy was a resident of the state of Maryland.

20. Andre Hardy was an African American, Male.

21. At all times relevant to this complaint, Andre Hardy was employed by the Board.

22. Andre Hardy was employed with the Board as a law enforcement officer from approximately 2011 until 2016.

23. During the time between 2011 and 2016, Mr. Hardy experienced discrimination based on his sex (male) by Board management and his supervisor, Lt. Kelly Graves (Male).

24. From 2011 to 2016, Mr. Hardy's work performance was exceptional.

25.    However, Mr. Hardy received lower performance evaluations than female officers
       that had the same performance or did not perform as well as Mr. Hardy.

26.    Mr. Hardy's supervisor, Lt. Kelly Graves routinely criticized, picked on,
       humiliated, ridiculed, yelled at and disparaged Mr. Hardy.

27.    Lt. Kelly Graves ("Mr. Graves") did not treat female officers with the same
       disrespect as Mr. Graves treated Mr. Hardy or other male officers.

28.    For example, Lt. Kelly Graves routinely permitted female officers to show up late
       to work or miss hours of work and excused female officer absences.

29.    Lt. Kelly Graves did not excuse Mr. Hardy's attendance or apply the attendance
       policy equally to Mr. Hardy and/or provide Mr. Hardy the same benefits as he
       provided to female officers.

30.    In 2015 and 2016, Mr. Hardy applied for multiple promotional opportunities.

31.    In 2015 and 2016, Mr. Hardy was repeatedly denied promotions that were given
       to less qualified female officers.

32.    On several occasions, Mr. Hardy applied for promotions and Mr. Graves and/or
       other Board management employees prohibited Mr. Hardy from interviewing for
       the promotions.

33.    However, Mr. Graves and/or other Board management employees permitted
       situated female officers to interview for the same positions.

34.    In approximately 2015 or 2016, due to the constant ridicule, criticism, humiliation
       and disparagement by Mr. Graves, Mr. Hardy requested to transfer to a different
       location away from Mr. Graves.

35.    Despite the fact that Mr. Hardy had seniority and had passed the requisite training courses, Mr. Graves and/or Board Management denied Mr. Hardy's transfer requests and approved the transfer request of a less qualified female officer.

36.    The female officer did not have the requisite qualifications for the position or the required training courses.

37.    The female officer also had multiple disciplinary issues which, under Board rules, should have prevented the female officer from being considered for a transfer.

38.    Mr. Hardy was not given a transfer.

39.    In 2015 or 2016, Mr. Hardy applied for the Board "Bike Team."

40.    The Bike Team is a special unit within the Board and is a coveted position for law enforcement officers.  The bike team comes with additional employment benefits.

41.    Mr. Hardy's application to the Bike Team was rejected by Mr. Graves and/or Board Management.

42.    Mr. Hardy was well qualified for the position and had passed the requisite training courses.

43.    Instead of selecting Mr. Hardy for the Bike Team, Mr. Graves and/or Board Management selected three female officers.

44.    None of the three female officers were qualified for the positions.

45.    All three female officers had failed the bike team certification test.

46.    Specifically, none of the female officers had passed the three-mile bike ride test or the bike cone-course test.

47.    Mr. Hardy made multiple complaints to the Board's Human Resources department and other Board employees that he believed he was being discriminated against based on his gender (male).

48.    Mr. Hardy made written complaints to Human Resources employees that he believed he was being discriminated against based on his gender (male).

49.    Mr. Graves was aware of Mr. Hardy's complaints of discrimination.

50.    In or around the middle, March 2016, Mr. Hardy applied for another promotion.

51.    At the time that Mr. Hardy applied for the promotion in 2016, Mr. Hardy's supervisor, Mr. Graves, was aware of Mr. Hardy's prior protected activity and complaints of discrimination.

52.    The March 2016 promotional opportunity required applicants to take a written test.

53.    Around the date of the test, Mr. Hardy's Aunt suddenly died.

54.    After his Aunt's death, Mr. Hardy told Lt. Graves how close Mr. Hardy and his Aunt had been.

55.    Mr. Graves and/or Board Management scheduled the promotion test for the same day as Mr. Hardy's Aunt's funeral.

56.    Mr. Hardy asked Lt. Graves to take the test on a different date.

57.    Mr. Graves denied Mr. Hardy's request and told Mr. Hardy "Hardy seems to me you're whining about the situation, either go be with your family or go take the test but stop crying about it".

58.    Mr. Graves could have re-scheduled Mr. Hardy's test or permitted him to take the test at a later date.

59.    After Mr. Graves denied Mr. Hardy's request, Mr. Hardy made a final complaint to the Board's EEO office and/or the Board's Human Resources office and/or a Board employee that is connected to the Board's EEO function.

60.    In that complaint, Mr. Hardy complained about discriminatory treatment (based on sex) and retaliation for his prior complaints of discrimination.

61.    Mr. Hardy believed that he was requesting the EEO office to initiate counseling.

62.    Mr. Hardy believed that he was making a complaint to an Agency employee connected to the Board's EEO office.

63.    Mr. Hardy believed that he was requesting the EEO office to grant him relief.

64.    Mr. Hardy believed that he was requesting someone connected to the Board's EEO office to grant him relief.

65.    Mr. Hardy believed that he was requesting the EEO office to investigate his claims.

66.    Mr. Hardy believed that he was requesting someone connected to the Board's EEO office to investigate his claims.

67.    Mr. Hardy also pleaded with the Board to transfer him away from Mr. Graves.

68.    Mr. Hardy wrote "all I'm asking for is to be reassigned to the K Street Unit for a change to redefine my career, set new goals, and build new working relationships."

69.    The Board never responded to Mr. Hardy's requests.

70.    Upon information and belief, the Board denied Mr. Hardy's requests.

71.    Upon information and belief, the Board never acted on Mr. Hardy's complaints.

72. On March 28, 2016, Mr. Hardy called his girlfriend and told her he was going to kill himself.

73. During that phone call, Mr. Hardy blamed the Agency's discrimination, retaliation and Mr. Graves for having repeatedly denying him promotions.

74. On March 28, 2016, Mr. Hardy recorded an audio suicide letter to his family.

75. The recording was made minutes before Mr. Hardy's death.

76. In that recording, Mr. Hardy complains about the treatment by the Board and attributes his suicide as the direct result of pain and suffering caused by discrimination and retaliation experienced at the hands of the Board and Lt. Graves.

77. Mr. Hardy died on March 28, 2016.

## ADMINISTRATIVE EXHAUSTION

78. Plaintiffs have exhausted their administrative remedies.

79. Prior to committing suicide, Andre Hardy contacted an EEO counselor.

80. Prior to committing suicide, Andre Hardy contacted an Agency employee that Mr. Hardy reasonably believed was an EEO counselor.

81. Prior to committing suicide, Andre Hardy contacted an Agency employee that was connected to the EEO counseling process.

82. Prior to committing suicide, Andre Hardy contacted an Agency employee whom Mr. Hardy reasonably believed was connected to the EEO counseling process.

83. Prior to committing suicide, Mr. Hardy complained of discrimination to one or more of the aforementioned Agency employees.

84. Prior to committing suicide, Mr. Hardy engaged in protected activity.

85.     Prior to committing suicide, Mr. Hardy initiated a complaint that satisfied the administrative exhaustion requirements under Title VII of the Civil Rights Act.

86.     On April 13, 2016, less than 45 days after Mr. Hardy's death, Plaintiffs Felicia Hardy and Barry Pope, as authorized representatives of Mr. Hardy's estate, through their attorney, initiated an EEO complaint on behalf of the deceased Mr. Hardy.

87.     Plaintiffs satisfied the administrative exhaustion requirement pursuant to Title VII on behalf of their deceased brother within 45 days of his death.

88.     On or around May 5, 2016, Plaintiffs' attorney received a notice of right to file from the Board.

89.     Plaintiffs and Mr. Hardy have satisfied all administrative exhaustion requirements prior to filing the instant complaint

## COUNT I – DISPARATE TREATMENT GENDER DISCRIMINATION IN VIOLATION OF TITLE VII 42 U.S.C.§2000(e),*et seq.*

90.     Plaintiffs incorporate by reference paragraphs 1 through 89 as if fully set forth herein.

91.      Plaintiffs and Mr. Hardy have exhausted all administrative remedies with respect to Count I.

92.     Mr. Hardy is male.

93.     Mr. Hardy is a member of a protected class

94.     At all times relevant to this complaint, Mr. Hardy maintained satisfactory job performance;

95.     Mr. Hardy suffered multiple adverse employment actions.

96.   Defendant took adverse employment actions against Mr. Hardy because of Mr. Hardy's gender.

97.   Defendant was motivated by Mr. Hardy's gender in taking the aforementioned adverse employment actions

98.   The aforementioned adverse employment actions give rise to an inference of discrimination.

99.   As a proximate result of Defendant's actions, Mr. Hardy suffered humiliation, fear, intimidation, ridicule, upset, economic losses and other emotional injuries including but not limited to, humiliation, loss of self-esteem, hurt, fear, frustration, emotional distress inconvenience and damage to his professional reputation.

100.   As a proximate result of Defendant's actions, Mr. Hardy committed suicide.

101.   As a proximate result of Defendant's actions, Mr. Hardy suffered damages in the form of lost wages, lost compensation, future lost earnings, economic losses, future loss of retirement benefits.

102.   Mr. Hardy is survived by his sister, Felicia Hardy and brother Barry Pope.  Felicia Hardy and Barry Pope are Mr. Hardy's personal representatives.

103.   Plaintiffs, on behalf of all survivors, ask for all damages that Mr. Hardy would have been entitled to claim during his lifetime, and all damages permitted by applicable law, including loss of financial support, loss of household services, and loss of care, education, training and advice that Mr. Hardy would have been expected to give if he had not died prematurely.

104. Plaintiffs, as personal representatives of Mr. Hardy's estate, makes claims against the Defendant, jointly and severally, for all damages recoverable under applicable law, including Mr. Hardy's conscious pain and suffering from the time of his injuries until his death, the loss of his net lifetime earnings after personal maintenance and support of family members, funeral bills and medical expenses.

**COUNT II – DISPARATE TREATMENT GENDER DISCRIMINATION (HOSTILE WORK ENVIRONMENT) IN VIOLATION OF TITLE VII 42 U.S.C.§2000(e),*et seq.***

105. Plaintiffs incorporate by reference paragraphs 1 through 104 as if fully set forth herein.

106. Plaintiffs and Mr. Hardy have exhausted all administrative remedies with respect to count II.

107. Mr. Hardy was subjected to sex discrimination by virtue of a hostile work environment.

108. The hostile work environment was severe and/or pervasive.

109. Mr. Hardy perceived the work environment as being hostile and/or abusive.

110. The work environment was because of Mr. Hardy's sex.

111. Defendant is responsible for the hostility of the work environment.

112. As a proximate result of Defendant's actions, Mr. Hardy suffered humiliation, fear, intimidation, ridicule, upset, economic losses and other emotional injuries and severe damages and injuries including but not limited to, humiliation, loss of self-esteem, hurt, fear, frustration, emotional distress inconvenience and damage to his professional reputation.

113.   Defendant was motivated by Mr. Hardy's gender in creating the hostile work environment.

114.   As a proximate result of Defendant's actions, Mr. Hardy committed suicide.

115.   As a proximate result of Defendant's actions, Mr. Hardy suffered damages in the form of lost wages, lost compensation, future lost earnings, economic losses, future loss of retirement benefits.

116.   Mr. Hardy is survived by his sister, Felicia Hardy and brother Barry Pope.  Felicia Hardy and Barry Pope are Mr. Hardy's personal representatives.

117.   Plaintiffs, on behalf of all survivors, ask for all damages that Mr. Hardy would have been entitled to claim during his lifetime, and all damages permitted by applicable law, including loss of financial support, loss of household services, and loss of care, education, training and advice that Mr. Hardy would have been expected to give if he had not died prematurely.

118.   Plaintiffs, as personal representatives of Mr. Hardy's estate, makes claims against the Defendant, jointly and severally, for all damages recoverable under applicable law, including Mr. Hardy's conscious pain and suffering from the time of his injuries until his death, the loss of his net lifetime earnings after personal maintenance and support of family members, funeral bills and medical expenses.

### COUNT III – RETALIATION IN VIOLATION OF
### TITLE VII 42 U.S.C.§2000(e),et seq.

119.   Plaintiffs incorporate by reference paragraphs 1 through 118 as if fully set forth herein.

120.   Plaintiffs and Mr. Hardy have exhausted all administrative remedies with respect to Count III.

121.    Mr. Hardy engaged in protected activity.

122.    Mr. Hardy engaged in opposition and participation activity under Title VII.

123.    Mr. Hardy had a good faith belief that he was opposing activity prohibited by Title VII.

124.    Mr. Hardy had a reasonable belief that he was opposing activity prohibited by Title VII.

125.    Defendant was aware of Mr. Hardy's protected opposition and participation activity.

126.    Mr. Hardy has suffered adverse actions.

127.    There is a causal connection between Mr. Hardy's protected activity and the adverse actions Mr. Hardy has suffered.

128.    As a proximate result of Defendant's retaliation, Mr. Hardy suffered humiliation, fear, intimidation, ridicule, upset, economic losses and other emotional injuries and suffered severe damages and injuries including but not limited to, humiliation, loss of self-esteem, hurt, fear, frustration, emotional distress inconvenience and damage to his professional reputation.

129.    As a proximate result of Defendant's retaliation, Mr. Hardy suffered damages in the form of lost wages, lost compensation, future lost earnings, economic losses, future loss of retirement benefits.

130.    As a proximate result of Defendant's actions, Mr. Hardy committed suicide.

131.    As a proximate result of Defendant's actions, Mr. Hardy suffered damages in the form of lost wages, lost compensation, future lost earnings, economic losses, future loss of retirement benefits.

132. Mr. Hardy is survived by his sister, Felicia Hardy and brother Barry Pope. Felicia Hardy and Barry Pope are Mr. Hardy's personal representatives.

133. Plaintiffs, on behalf of all survivors, ask for all damages that Mr. Hardy would have been entitled to claim during his lifetime, and all damages permitted by applicable law, including loss of financial support, loss of household services, and loss of care, education, training and advice that Mr. Hardy would have been expected to give if he had not died prematurely.

134. Plaintiffs, as personal representatives of Mr. Hardy's estate, makes claims against the Defendant, jointly and severally, for all damages recoverable under applicable law, including Mr. Hardy's conscious pain and suffering from the time of his injuries until his death, the loss of his net lifetime earnings after personal maintenance and support of family members, funeral bills and medical expenses.

**WHEREFORE,** Plaintiffs demand judgment against Defendant for the following relief:

A) An award of monetary relief in the amount of $10million as compensation for future lost earnings, economic losses, loss of support, pain and suffering, the loss of his net lifetime earnings after personal maintenance and support of family members, funeral bills and medical expenses.

B) An award of disbursement of costs, expense, expert witness fees and attorney's fees, and pre and post judgment interest; and

C) Such other relief as the court deems proper and just.

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL COUNTS**

***Daniel E. Kenney /s/***
Daniel E. Kenney, Esq.
DC Bar No. MD0025
DK Associates, LLC
5425 Wisconsin Avenue, Suite 600
PMB #653
Chevy Chase, MD 20815
202-430-5966 Phone
dan@dkemployment.com

15