# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**FELICIA HARDY and BARRY POPE**, *as personal representatives of the estate of Andre Hardy*,

                Plaintiffs,

                    v.

**JEROME H. POWELL**, *in his official capacity as Chairman, Board of Governors of the Federal Reserve System*,

                Defendant.

Case No. 1:16-cv-01572 (TNM)

## MEMORANDUM OPINION

Felicia Hardy and Barry Pope seek $10 million in this Title VII retaliation case against Jerome Powell, whom they have sued in his official capacity as Chairman of the Board of Governors of the Federal Reserve System.[1] As personal representatives of the estate of Andre Hardy, they allege that the Federal Reserve drove Mr. Hardy to commit suicide by retaliating against him for engaging in activity protected by Title VII. Because the Plaintiffs cannot show that they have exhausted their retaliation claims and because they cannot show that retaliation took place, the Defendant's Motion for Summary Judgment will be granted.[2]

---

[1] The Complaint named Janet Yellen as the Defendant, in her official capacity. Federal Rule of Civil Procedure 25(d) automatically substitutes her successor, Jerome Powell, as the Defendant.

[2] Summary judgment on Ms. Hardy's claims will also be granted on the alternative ground that she cannot sue as a personal representative of Mr. Hardy's estate because Mr. Pope is the sole personal representative of that estate. *See* Mot. Summary J. Ex. U. Ms. Hardy's unsupported statement that she disagrees with this assertion does not create

**I.**

Mr. Hardy worked for the Board of Governors of the Federal Reserve System as a law enforcement officer from 2011 to 2016. Compl. ¶ 22. In 2015, Mr. Hardy participated in tryouts for a new bike patrol unit. Opp. to Mot. Summary J. 5. Although he scored 95% on speed test, he scored 30% on a cone course test. Mot. Summary J. Ex. K. His supervisor, Lieutenant Kelly Graves, gave him a 100% recommendation, and he also earned a 100% "D.C. Code Score." *Id.*; *see also* Opp. to Mot. Summary J. 5. Mr. Hardy's overall score of 81% represents the average of these four scores and placed him 17 out of 21 tryout participants. *See* Mot. Summary J. Ex. K. Nine participants, including three female officers, were selected for the bike team, but Mr. Hardy was not selected. Opp. to Mot. Summary J. 5.

In June 2015, Mr. Hardy contacted the Board's Employee Relations office to discuss his concern that female officers were favored over him in the formation of the bike team. *Id.* at 6.[3] Employee Relations forwarded Mr. Hardy's complaint to the Board's Equal Employment Opportunity, or EEO, office. *Id.* In August 2015, Mr. Hardy

---

a genuine factual dispute. *See* Pls.' Response to Def.'s Statement of Undisputed Material Facts ¶ 28.

[3] The record does not reflect exactly how Mr. Hardy thought his non-selection for the bike team was discriminatory. But the Plaintiffs have offered their own explanation. The Plaintiffs assert that the scores on the speed and cone tests were percentiles rather than percentages and that, because the worst performer on the speed test scored 62%, Mr. Hardy could have been the worst performer on the cone test and still deserved a 62% score "at a minimum." Pls.' Response to Def.'s Statement of Undisputed Material Facts ¶ 16. According to the Plaintiffs, this shows that the Board scored Mr. Hardy arbitrarily on the cone test to ensure female officers would score above him. *Id.* But what the Plaintiffs' argument really shows is their own failure to understand mathematics. Being the worst performer and being in the sixty-second percentile are not the same. In any event, only the Board's alleged retaliatory actions post-dating the tryouts are now before me.

2

spoke with Andre Smith, an EEO counselor, to discuss the bike selection process and other instances of perceived discrimination. *Id.*

The Plaintiffs allege that Mr. Hardy's supervisors learned of his complaint as soon as he contacted the EEO office, and that Lt. Graves retaliated against Mr. Hardy because of it. *Id.* at 6-11. For example, they allege that when Mr. Hardy sought promotion to corporal, Lt. Graves denied his request to reschedule a necessary exam. *Id.* at 9-10.[4] They also allege that Lt. Graves denied Mr. Hardy's request to transfer to a different location, where Mr. Hardy would no longer be under Lt. Graves's supervision. *Id.* at 10-11.[5] Mr. Hardy complained about these incidents in a letter to Employee Relations. *Id.* Ex. 18. But rather than characterizing them as retaliation, he described them as examples of discrimination and complained that Lt. Graves made it clear from the time he first began to supervise Mr. Hardy that he "was coming for [him] personally." *Id.* Ex. 18 1.

On March 14, 2016, Mr. Hardy submitted a resignation letter:

---

[4] According to the Board, Mr. Hardy could not reschedule his exam because of an unwavering rule against make-up exams that protects the integrity of testing. Mot. Summary J. 9-10; *see also id.* Ex. N ¶ 4. The Plaintiffs disagree, noting that the Board had never administered the corporal exam before and that nothing in the General Order setting guidelines for participation in the Corporal Program prohibited rescheduling the test. Pls.' Response to Def.'s Statement of Undisputed Material Facts ¶ 19. They also argue that the Board's willingness to accommodate a different employee's travel schedule by conducting an interview by phone shows that the Board should have accommodated Mr. Hardy's rescheduling request. Opp. to Mot. Summary J. 21. But none of this undermines the Board's position. A telephonic interview does not implicate the process integrity concerns that are raised by allowing one test taker to take a standardized test at a different time than his peers.

[5] The parties dispute whether transfer required Mr. Hardy to submit a written request up the chain of command and whether Mr. Hardy did so. *See* Mot. Summary J. 10; Pls.' Response to Def.'s Statement of Undisputed Material Facts ¶ 22. For purposes of this ruling, I assume the Plaintiffs' version of events is correct.

3

> I am writing to inform you that I am resigning from my position with The Federal Reserve. Thank you for the opportunities and professional development that I have received from the Federal Reserve Law Enforcement Unit. While I believe that that [sic] I am moving for good reasons. I am sorry to leave and I thank you for your support during my time with The LEU [Law Enforcement Unit], which I have found enjoyable and fulfilling.
>
> I am putting in my two weeks' notice and I hope this is sufficient for you. My last day in office will be Monday, March 28 2016. With an effective date of Tuesday, March 29 2016.

*Id.* Ex. 25. Tragically, on March 28, Mr. Hardy committed suicide after recording an audio note explaining his frustrations with Lt. Graves and his sense that he could never advance in his career. *Id.* at 11.

In April 2016, the Plaintiffs initiated an EEO complaint on behalf of Mr. Hardy's estate, alleging that discrimination and retaliation had driven Mr. Hardy to resign his position and take his own life. *Id.* at 11-12. The Board dismissed their complaint because Mr. Hardy's estate lacked standing. *Id.* at 26-27. The Plaintiffs then sued the Chairman of the Board of Governors in federal court, alleging that the Board violated Title VII by committing sex discrimination and by retaliating against Mr. Hardy for engaging in activity protected by Title VII. The Defendant moved to dismiss the Complaint. In response, the Plaintiffs dropped their claims of sex discrimination but added new allegations about retaliation. *Id.* at 3 n.1, 17. The Board's Motion for Summary Judgment is now ripe.

## II.

To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is

4

material if it could alter the outcome of the suit under the substantive governing law. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the party seeking summary judgment makes this showing, the non-moving party bears the burden of setting forth "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

### III.

"Aggrieved persons who believe they have been discriminated against . . . must consult a Counselor prior to filing a [formal administrative] complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a).[6] This begins the process for seeking an administrative remedy—a process that a plaintiff must complete, or "exhaust," before bringing a Title VII claim in federal court. *Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 92 (D.D.C. 2005) (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976)); *see also* 42 U.S.C. § 2000e-16(c). A plaintiff must satisfy the administrative exhaustion requirement for each discrete act of discrimination or retaliation of which he complains.

---

[6] The phrase "discriminated against" appears to include "retaliated against," since Title VII's anti-retaliation provision describes retaliation as discrimination based on engagement in protected activity. *See* 42 U.S.C. § 2000e-3(a). In any event, the Plaintiffs concede that 29 C.F.R. § 1614.105 governs exhaustion of their retaliation claims. *See* Opp. to Mot. Summary J. 27-29.

5

*Nurriddin*, 382 F. Supp. 2d at 93 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002)).

The Plaintiffs claim that Lt. Graves discriminated against Mr. Hardy for engaging in Title VII activity. To satisfy the counseling requirement for this claim, which would be the first step toward showing exhaustion, Mr. Hardy would have had to believe that Lt. Graves retaliated against him and would have had to consult with an EEO Counselor about the alleged retaliation. This he did not do.

The Plaintiffs seek to satisfy the counseling requirement in three ways. First, they note that Mr. Hardy contacted EEO Counselor Andre Smith. Opp. to Mot. Summary J. 23-24. Second, they note that Mr. Hardy complained about unfair treatment in a letter that he sent to Gina Lewis, who worked in Employee Relations. *Id.* at 24-26.[7] Third, they argue that they satisfied the counseling requirement on Mr. Hardy's behalf by contacting an EEO Counselor as the representatives of his estate. *Id.* at 26-30.

But none of this shows Mr. Hardy believed that Lt. Graves retaliated against him and that he consulted with an EEO Counselor about the problem. Although Mr. Hardy complained to Mr. Smith and Ms. Lewis about sex discrimination, he did not complain that Lt. Graves mistreated him in retaliation for engaging in Title VII activity. The Plaintiffs do not allege that Mr. Hardy complained to Mr. Smith about retaliation. *See* Opp. to Mot. Summary J. 23-24. In fact, they allege that the retaliation of which they complain took place *after* Mr. Hardy contacted Mr. Smith and in response to that contact. *See id.* at 6.

---

[7] Because this argument fails on other grounds, I do not decide the parties' dispute about whether Ms. Lewis may substitute for an EEO Counselor for purposes of 29 C.F.R. § 1614.105.

The Plaintiffs do claim that Mr. Hardy's letter to Ms. Lewis complained about Lt. Graves retaliating against him for Title VII activity. Pls.' Response to Def.'s Statement of Undisputed Material Facts ¶ 21. But the letter does not reference retaliation, allege that Lt. Graves treated Mr. Hardy differently because of his Title VII activity, or even suggest that Lt. Graves knew of Mr. Hardy's Title VII activity. *See* Opp. to Mot. Summary J. Ex. 18. To the contrary, the letter states that Lt. Graves mistreated Mr. Hardy because of his sex and that Mr. Hardy felt clear Lt. Graves "was coming for [him] personally" even before he engaged in Title VII activity. Opp. to Mot. Summary J. Ex. 18, 1. Thus, the record shows that Mr. Hardy did not initiate counseling for retaliation and suggests that he did not believe the treatment he experienced was retaliation for Title VII activity. This is fatal to the Plaintiffs' retaliation claim. One can only sue for the specific Title VII violations that were complained of to one's employer. *Nurriddin*, 382 F. Supp. 2d at 92. Swapping Title VII horses midstream frustrates the employer's ability to address actual misconduct before litigation becomes necessary and increases the time and expense involved in defending against frivolous allegations.

As for the Plaintiffs' argument that they have satisfied the counseling requirement on Mr. Hardy's behalf, it is inconsistent with the requirement that "[a]ggrieved persons who believe they have been discriminated against" undergo counseling. *See* 29 C.F.R. § 1614.105(a). The Plaintiffs emphasize that Title VII defines "person" broadly to include governments, agencies, unions, companies, and, most importantly here, legal representatives. 42 U.S.C. § 2000e(a). But no one disputes that the Plaintiffs are persons. The question is whether they have received counseling as "[a]ggrieved persons who believe they have been discriminated against." And the Plaintiffs do not allege that

Lt. Graves discriminated against them, but that he discriminated against Mr. Hardy for engaging in Title VII activity. Thus, they cannot satisfy the counseling requirement. This conclusion follows from the plain language of 29 C.F.R. § 1614.105(a).[8]

Perhaps in recognition of their textual argument's weakness, the Plaintiffs suggest two other reasons that their initiation of counseling should satisfy 29 C.F.R. § 1614.105(a). First, they worry that requiring the aggrieved person to initiate counseling would prevent justice from being done when employees murder their colleagues. Opp. to Mot. Summary J. 27-28. Second, they argue that this requirement is inconsistent with precedents establishing that a decedent's estate may pursue Title VII claims that the decedent initiated while living. *Id.* at 28.

Neither of these concerns swayed the court in what appears to be the only judicial opinion to have decided this question.[9] The plaintiff in *Wright ex rel. Wright v. United States* was a man whose wife had been murdered. 914 F. Supp. 2d 837, 840 (S.D. Miss. 2012). The woman's supervisor, who had been in an affair with her, was indicted for the murder. *Id.* The plaintiff sought to initiate a Title VII sex discrimination and retaliation claim as the decedent's legal representative. *Id.* at 840, 842. The court recognized that a Title VII claim initiated by an employee survives him and may be pursued by the employee's legal representatives. *Id.* at 841-42. But it "found no case recognizing the

---

[8] It is also implicit in the regulation's description of the purpose for counseling, which is "to try to informally resolve the matter"—an effort that requires the involvement of the aggrieved party. *See* 29 C.F.R. § 1614.105(a).

[9] The Plaintiffs seek to distinguish *Wright* by pointing out its alternative holdings. Opp. to Mot. Dismiss 28-29. "But where a decision rests on two or more grounds, none can be relegated to the category of *obiter dictum*." *Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949). That is, alternative holdings are still holdings.

8

authority of a deceased employee's representative to *initiate* an administrative complaint on behalf of the deceased employee." *Id.* at 842 (emphasis added). And it held that the husband could not assert a Title VII claim on behalf of his wife that she had not initiated while still alive. *Id.* at 843.

*Wright* did not insist, as the Plaintiffs do, that Title VII provides a necessary remedy for murder. But if a Title VII claim were necessary to promote justice, the problem could likely be resolved by an equitable doctrine such as estoppel since exhaustion in the Title VII context is not jurisdictional but functions like a statute of limitations. *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). And *Wright* shows that, contrary to the Plaintiffs' view, precedents allowing a decedent's estate to pursue Title VII claims that the decedent initiated while still alive are distinguishable from situations like their own. This makes sense because an employee must satisfy the counseling requirement to initiate a Title VII claim, and once that requirement is satisfied it will not pose a bar to litigation.[10] In short, the Plaintiffs' arguments cannot overcome the fact that the text of the regulation and the only precedent that is on point show they cannot satisfy the counseling requirement on behalf of Mr. Hardy.

---

[10] The Equal Employment Opportunity Commission has reached the same conclusion. *See, e.g.*, *Powell v. Cohen*, 2001 WL 135460 at *1 (E.E.O.C. Feb. 6, 2001); *Katz v. Glickman*, 1998 WL 321191 at *1 (E.E.O.C. June 5, 1998). Although this is persuasive authority, I note that *Auer* deference does not apply because the text of the regulation is unambiguous. *See Auer v. Robbins*, 519 U.S. 452, 463 (1997) (assessing "the Secretary's power to resolve ambiguities in his own regulations").

## IV.

For the reasons stated above, I conclude that the Plaintiffs have failed to satisfy Title VII's exhaustion requirements. Thus, the Defendant's Motion for Summary Judgement will be granted. A separate order will issue.

Dated: July 10, 2018

TREVOR N. MCFADDEN
United States District Judge